D|F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SOLIMAR MARRERO,

                Plaintiff,

        -against-

CHRISTOPHER LEE CLEMMONS and
WESTERN EXPRESS, INC.,

                Defendants.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

**16-CV-6304 (NGG) (RER)**

NICHOLAS G. GARAUFIS, United States District Judge.

This action arises out of a motor vehicle accident that occurred while Plaintiff Solimar Marrero was parked at an intersection in Red Hook, Brooklyn. Plaintiff alleges that a tractor-trailer driven by Defendant Christopher Clemmons and owned by Defendant Western Express, Inc. ("Western Express") collided with her car as it attempted to make a right turn. (See Compl. (Dkt. 1 at ECF p.7).) Currently before the court is Defendants' motion for summary judgment. (Defs. Mot. for Summ. J. ("Mot.") (Dkt. 27).)

For the following reasons, Defendants' motion is DENIED.

I.     **BACKGROUND**

    A.     **Facts**

The court constructs the following statement of facts from the parties' Local Rule 56.1 statements and the admissible evidence they submitted. Except as otherwise noted, the following facts are undisputed. Where facts are in dispute, the court notes the dispute, and credits Plaintiff's version of the particular fact if it is supported by record evidence. All evidence is construed in the light most favorable to Plaintiff with all "reasonable inferences" drawn in her favor. ING Bank N.V. v. M/V Temara, IMO No. 9333929, 892 F.3d 511, 518 (2d Cir. 2018).

1. <u>Plaintiff's Pre-Existing Medical Conditions</u>

Plaintiff was involved in a motor vehicle accident in 2009 in which she injured her neck, back, and right shoulder. (Defs. Rule 56.1 Statement ("Defs. 56.1") (Dkt. 27-13) ¶ 11.) As a result of these injuries, Plaintiff received a series of three epidural injections in her back and three epidural injections in her neck. (Id. ¶ 12.) She filed a lawsuit to recover damages relating to those injuries, claiming that she had suffered disc herniations in her cervical spine and disc bulges in her lumbar spine as a result of the accident. (Id. ¶ 14.) In part because of the injuries sustained in the 2009 accident, Plaintiff applied for and received Social Security benefits. (Id. ¶ 13.)

In her deposition, Plaintiff stated that she continued to suffer back pain from these injuries leading up to the subject collision in 2015. (Id. ¶ 16.) She testified that the pain was under control, and that it was limited to the right side of her back. (Pl. Rule 56.1 Statement ("Pl. 56.1") (Dkt. 28-6) ¶ 2.)

2. <u>The Collision</u>

The details of the collision itself are not in dispute. The parties agree that on January 13, 2015, Plaintiff was sitting in her parked four-door Ford Explorer when it was struck by Defendants' vehicle. (See Defs. 56.1 ¶¶ 1-2.) The airbags in Plaintiff's car did not deploy, and the brunt of the damage was to the rear driver's side of her car. (Id. ¶¶ 5-6.) Plaintiff's car sustained a total of $5,604.33 in damage, inclusive of parts and labor. (Id. ¶ 7.)

Plaintiff testified that as a result of the collision, her left shoulder struck the door next to her. (Pl. 56.1 ¶ 4.) Immediately thereafter, she felt sore on the left side of her neck and in her left shoulder. (Id.)

### 3. Plaintiff's Post-Collision Medical Records, Treatment, and Examinations

Plaintiff first sought medical treatment after the accident on January 21, 2015. (Id. ¶ 8.) As this time, she saw chiropractor Dr. Scott Leist at the Kings Highway Chiropractic Office and reported that she was suffering from left shoulder, neck, and lower back pain. (Id.) She also stated that she had been experiencing headaches and dizziness. (Id. ¶ 9.) Dr. Leist noted the following range of motion limitations in her neck: 45/70 on flexion, 20/50 on extension, 20/50 on right lateral flexion, 20/50 on left lateral flexion, 25/75 on right rotation, and 20/75 on left rotation. (Id.) He also observed the following limitations in her lower back: 60/90 on flexion, 25/40 on extension, 25/40 on right lateral flexion, 25/40 on left lateral flexion, 20/40 on right rotation, and 20/40 on left rotation. (Id. ¶ 10.)

On January 30, 2015, Plaintiff began receiving physical therapy at Washington Medical P.C., which is associated with Dr. Leist's office. (Id. ¶ 11.) She reported continued pain in left shoulder and neck, as well as numbness and tingling in her arms. (Id.) She also stated that she was having difficulty with daily activities, including lifting and pushing and household chores. (Id.) After this visit, she was referred for MRIs of her cervical and lumbar spines. (Id. ¶ 12.) She continued to receive physical therapy until approximately May 2015. (Id.)

On March 12, 2015, Plaintiff received MRIs at Impulse Imaging that revealed the following injuries: bulging discs and C3-4 and C4-5, a posterior herniated disc at C5-6, and posterior herniated discs at L4-5 and L5-S1. (Id. ¶¶ 13-14; see also Affirmation of Dr. Charles DeMarco (Dkt. 28-3 at ECF p.1) ¶ 1.)

Then, on March 18, 2015, Plaintiff presented for a pain management evaluation at Washington Medical, P.C., reporting moderate to severe pain, stiffness, and muscle spasms in her neck and lower back and left shoulder pain. (Pl. 56.1 ¶ 15.) Dr. Sawey Harshash examined

3

her, and once again noted limited range of motion in her neck and back. (Id. ¶¶ 15, 17.) Dr. Harsash recommended that Plaintiff receive trigger point injections and noted that he believed "within a reasonable degree of medical certainty" that the January 2015 accident had caused her injuries. (Id. ¶ 17.)

On March 30, 2015, Plaintiff underwent a nerve block injection to her L4-L5 nerve roots. (Id. ¶ 19.) That same day, she reported moderate to severe neck pain with muscle spasms radiating to her shoulder with numbness and tingling, moderate to severe bilateral lower back pain radiating to her buttocks and legs, and bilateral shoulder pain. (Id. ¶ 19.) She followed up with her pain management specialist on April 29, 2015, reporting the same symptoms, and was advised to continue her conservative treatment plan. (Id. ¶ 20.) At a physical therapy appointment on May 6, 2015, Plaintiff reported that her left shoulder pain was an eight on a scale of one to ten and described that pain as "constant." (Id. ¶ 21.) She stated that she had "difficulty with prolonged standing, lifting/pushing, sitting, and household chores." (Id.) On July 21, 2015, Plaintiff received an MRI of her left shoulder at Impulse Imaging. (Id. ¶ 22.) The MRI revealed a bone spur and tendon degeneration. (Id.)

Plaintiff next sought treatment on February 8, 2016. (Id. ¶ 23.) At that time, she presented for another pain management evaluation at Pain Physicians NY, reporting neck pain radiating bilaterally to her shoulders and back pain radiating to her right leg with numbness and tingling. (Id.) She further reported constant pain in her lower back exacerbated by "mechanical-type activities." (Id.) Plaintiff was diagnosed with cervical and lumbar disc displacement and radiculopathy and referred to receive injections to treat her pain. (Id. ¶ 24.) She returned for follow-up appointments on February 15, 2016 and February 29, 2016. (Id. ¶¶ 25-26.) On April 11, 2016, she received injections to her lumbar spine. (Id. ¶ 26.) About a year later, in May

4

2017, Plaintiff began receiving chiropractic care, which she attended one to two times per week for about four months. (Defs. 56.1 ¶ 28.)

On September 29, 2017, Plaintiff was examined by a Dr. Gabriel Dassa. (Id. ¶ 27.) At that time, Plaintiff continued to complain of pain in her neck, back, and left shoulder, as well as radiating pain into her arms and legs and finger spasms. (Id.) She also exhibited a limited range of motion in the cervical and lumbar spines and in the left shoulder. (Id. ¶¶ 28-30.) Dr. Dassa, a board-certified orthopedic surgeon, reviewed Plaintiffs MRIs and determined that she suffered from at least one disc herniation that was not present in MRIs from 2009. (Id. ¶ 31; see also Expert Report of Dr. Gabriel L. Dassa ("Dassa Report") (Dkt. 28-5) at 1.)

On October 12, 2017, Plaintiff was examined by Dr. Yong Kim, also a board-certified orthopedic surgeon (see Curriculum Vitae of Dr. Yong Kim (Dkt. 27-10 at ECF p.4) at 2), who determined that Plaintiff had suffered from a cervical and lumbar strain, but that both were fully resolved. (Pl. 56.1 ¶¶ 36-37.) Although Dr. Kim's report mentions Plaintiff's left shoulder pain, it does not discuss it further. (Expert Report of Dr. Yong Kim ("Kim Report") (Dkt. 27-10 at ECF p.10) at 6-8.) Dr. Kim concluded that the 2015 MRIs showed injuries that were either degenerative or stemmed from the 2009 accident, and concluded that Plaintiff did not require additional orthopedic treatment for her cervical or lumbar spine. (Id. at 7-8.)

On October 24, 2017, Plaintiff received a third medical examination from Dr. Eial Faierman, another board-certified orthopedic surgeon (see Curriculum Vitae of Dr. Eial Faierman (Dkt. 27-11 at ECF p.4) at 1). (Pl. 56.1 ¶ 38.) Dr. Faierman concluded that Plaintiff had suffered recurring cervical and lumbar strains and shoulder pain, which had been resolved. (Id. ¶ 40.) He did not review any MRI films. (Id.)

Finally, Dr. Melissa Sapan, a board-certified radiologist (see curriculum vitae of Dr. Melissa Sapan (Dkt. 27-12 at ECF p.4) at 3), reviewed several of Plaintiff's MRIs in the fall of 2017. (See Reports of Dr. Melissa Sapan ("Sapan Reports") (Dkt. 27-12 at ECF p.8).) She determined that Plaintiff's MRIs indicate degenerative damages in the left shoulder (id. at ECF p.11), degenerative disc disease at the L5-S1 level (id. at ECF p.13), and a disc bulge at the C3-C4 level and a disc herniation at the C5-C6 level that she did not believe were related to trauma (id. at ECF p.15).

### 4. Effect on Plaintiff's Life

Plaintiff has testified that her pain following this accident is worse than that following her previous accident, and that she has stopped treatment for the time being but would like to continue once her insurance situation is clarified. (Pl. 56.1 ¶¶ 5-6.) She stated that she continues to suffer from neck, back, and shoulder pain radiating into her buttocks and legs. (Id. ¶ 7.) She reports continued interference with day-to-day activities, in that she is unable to walk as much as she used to, has trouble singing and picking her child up, and has difficulty engaging in sexual activity. (Defs. 56.1 ¶ 31.) As Defendant notes, she did deliver a healthy baby in August 2017, and has taken two vacations to Florida with her family since the accident. (Id. ¶¶ 32-33.)

Immediately after the collision, Plaintiff went to work and completed a full day of work. (Defs. 56.1 ¶¶ 18-19.) She has not missed any other days of work as a result of this accident. (Id. ¶ 21.)

### B. Procedural History

On October 27, 2016, Plaintiff filed her complaint in the Supreme Court of New York, County of Kings. (Notice of Removal (Dkt. 1) at 1.) On November 11, 2016, Defendants removed the case to this court on the basis of diversity jurisdiction (id. at 2-3) and, on November

6

17, 2016, answered Plaintiff's complaint (see Answer (Dkt. 5)). Discovery proceeded before Magistrate Judge Ramon E. Reyes (see Nov. 29, 2016 Min. Entry) and was completed on January 5, 2018 (see Jan. 3, 2018 Order)).

Defendants filed their fully briefed motion for summary judgment on July 13, 2018. (Defs. Mot. for Summ. J. ("Mot.") (Dkt. 27); Pl. Resp. in Opp'n to Mot. (Dkt. 28); Defs. Reply in Supp. of Mot. (Dkt. 29).) Defendants move for summary judgment based on the New York No-Fault Law, which prohibits recovery in automobile-accident cases for non-economic loss "except in the case of a serious injury," N.Y. Ins. L. § 5104. Defendants argue that Plaintiff has not provided sufficient evidence of a serious injury within the meaning of the law. (See Defs. Mem. in Supp. of Mot. ("Mem.") (Dkt. 27-14) at 2.)

## II. LEGAL STANDARD[1]

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." Figueroa v. Mazza, 825 F.3d 89, 98 (2d Cir. 2016) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The

---

[1] The federal burden of proof on a motion for summary judgment differs from the corresponding standard under New York law for a third-party liability automobile accident case. Under New York law, when a motion for summary judgment is predicated on a dispute over whether a plaintiff has suffered a serious injury, a defendant bears the initial burden to demonstrate that the plaintiff has not suffered such an injury. See Baez v. Rahamatali, 850 N.E.2d 19, 19 (N.Y. 2006). If the defendant meets this burden, "the plaintiff must then put forth competent medical evidence" to defeat the motion. Flaccomio v. United States, No. 04-CV-3213 (TCP), 2006 WL 8441409, at *3 (E.D.N.Y. June 23, 2006) (citing Gaddy v. Eyler, 591 N.E.2d 1176, 1177 (N.Y. 1992)). The court must then determine whether a plaintiff has successfully shown the existence of a prima facie serious injury. Id. (citing Licari v. Elliott, 441 N.E.2d 1088, 1091 (N.Y. 1982)). As the allocation of the burden of proof at the summary judgment stage is a matter of procedural law, however, this burden does not apply in an action brought in federal court. See, e.g., Vasquez v. United States, No. 14-CV-1510 (DF), 2016 WL 315879, at *4 (S.D.N.Y. Jan. 15, 2016); Zeak v. United States, No. 11-CV-4253 (KPF), 2014 WL 5324319, at *8 (S.D.N.Y. Oct. 20, 2014). The court will thus apply the federal standard for summary judgment.

movant may discharge this burden by showing that the nonmoving party has 'fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co., 255 F. Supp. 3d 443, 451 (S.D.N.Y. 2015) (alteration in original) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "'The mere existence of a scintilla of evidence' in support of the non-movant will be insufficient to defeat a summary judgment motion." Transflo Terminal Servs., Inc. v. Brooklyn Res. Recovery, Inc., 248 F. Supp. 3d 397, 399 (E.D.N.Y. 2017) (quoting Anderson, 477 U.S. at 252).

"In determining whether an issue is genuine, '[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion.'" SCW W. LLC v. Westport Ins. Corp., 856 F. Supp. 2d 514, 521 (E.D.N.Y. 2012) (quoting Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995) (alteration in original). "[T]he judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Redd v. N.Y. Div. of Parole, 678 F.3d 166, 173-74 (2d Cir. 2012) (quoting Anderson, 477 U.S. at 249). However, "[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," and "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (quotation marks and citation omitted).

## III. APPLICATION

Defendants move for summary judgment based on the New York No-Fault Law. That law prohibits recovery in automobile-accident cases for non-economic loss, "except in the case of a serious injury," N.Y. Ins. L. § 5104, which it defines as follows:

> a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. L. § 5102(d).

First, Defendants argue that Plaintiff has not provided sufficient evidence to create a genuine dispute as to whether she has suffered a serious injury. (See Mem. at 2.) Plaintiff claims, however, that she has suffered a serious injury in that she "sustained a permanent consequential limitation of use of a body part or significant limitation and/or that she was medically prevented from performing her usual and customary activities for 90/180 days following the accident." (Pl. Mem. in Opp'n to Mot. ("Resp.") (Dkt. 28-7) at 9.)

Second, Defendants argue that even if Plaintiff has provided sufficient evidence of the seriousness of her injury, she has not adequately shown that her injury was caused by the 2015 accident.

The court will address each of Defendants' arguments in turn.

### A. Serious Injury

To show that she has sustained serious injuries entitling her to recover under the no-fault statute, Plaintiff must demonstrate that her injuries fall within one of the nine statutory

9

categories. See N.Y. Ins. L. § 5102(d). For the following reasons, the court finds that Plaintiff has provided sufficient evidence to create a dispute issue of fact as to whether she sustained a "significant limitation of use of a body function or system," id., and so does not address the other eight categories.

In order to show a significant limitation, a plaintiff must provide objective evidence of that limitation. Zhang v. Alvarado, No. 15-CV-4373 (NGG), 2017 WL 6375732, at *7 (E.D.N.Y. Dec. 12, 2017) ("Subjective complaints alone are not sufficient for a finding of serious injury, and objective evidence is needed." (quoting Guiltieri v. Farina, 283 F. Supp. 2d 917, 921 (S.D.N.Y. 2003) (alteration adopted))). The parties do not dispute that MRIs of Plaintiff's neck and back show herniated and bulging discs. (See Defs. 56.1 ¶¶ 51-53; Pl. 56.1 ¶¶ 13-14.) However, "the mere existence of a bulging or herniated disc does not establish a serious injury in the absence of objective evidence of a related disability or restriction." Rudas v. Petschauer, 781 N.Y.S.2d 120, 121 (N.Y. App. Div. 2004). Objective testing that demonstrates range of motion below normal measurements may constitute such evidence. See Zhang, 2017 WL 6375732, at *8 (citing Toure v. Avis Rent A Car Sys., Inc., 774 N.E.2d 1197, 1201-02 (N.Y. 2002); Cowley v. Crocker, 589 N.Y.S.2d 119, 120-21 (N.Y. App. Div. 1992)).

As Plaintiff notes, every doctor to have examined Plaintiff—including Defendants' own expert witnesses—observed significant limitations to the range of motion in her neck and back. (Opp'n at 15.) Dr. Leist, who examined Plaintiff just eight days after the 2015 accident, noted a 46%-74% decrease in the range of motion in Plaintiff's neck and back. (Pl. 56.1 ¶¶ 9-10.) At Plaintiff's initial pain management appointment on March 18, 2015, Dr. Harhash noted similar restrictions in her range of motion. (See Washington Medical, P.C. Mar. 18, 2015 Records (Dkt. 28-2 at ECF p.2) at ECF pp.9-10.) Over two years later, on September 29, 2017, Dr. Dassa

10

observed significant restrictions in Plaintiff's range of motion in her neck and back, ranging from a 17% loss of range up to an 88% loss on lateral rotation in her neck. (Pl. 56.1 ¶ 28.) He also observed limited range of motion in Plaintiff's left shoulder, up to a 34% loss on extension. (Id. ¶ 30.) The two of Defendants' experts who examined Plaintiff—Drs. Kim and Faierman—noted comparable limitations in her range of motion. (Id. ¶¶ 34, 38.)

In similar situations, courts applying New York law have regularly found that there is, at the least, a genuine dispute as to whether a plaintiff has suffered a serious injury. (See, e.g., Burzynski v. United States, No. 13-CV-766, 2016 WL 6298513, at *6 (W.D.N.Y. Oct. 27, 2016) ("It has been consistently held that a measure of a range of motion limitation, taken together with an MRI or other formal objective test, is sufficient to create a genuine issue of material fact." (alterations adopted) (citations omitted)); Pommells v. Perez, 830 N.E.2d 278, 285 (N.Y. 2005) (holding that a plaintiff's claim survived summary judgment when her doctor stated that she had suffered severe and permanent injuries and that opinion was supported by measurements of loss of range of motion and an MRI revealing herniated discs); Clervoix v. Edwards, 781 N.Y.S.2d 690, 690 (N.Y. App. Div. 2004) (treating chiropractor's affidavit indicating decreased range of motion and MRI showing bulging and herniated discs as sufficient to defeat summary judgment). In accordance with these cases, the court holds that the MRIs of Plaintiff's neck and back showing herniated and bulging discs, together with the objective measures of Plaintiff's limited range of motion, are sufficient to establish that Plaintiff has suffered a serious injury within the meaning of New York's no-fault statute, N.Y. Ins. L. § 5104.

### B. Causation

Defendants also contend that Plaintiff has not provided sufficient evidence that her injuries were caused by the 2015 collision, rather than the 2009 collision or general degenerative

11

conditions. (See Mem. at 13-17; Reply at 3-8.) In particular, Defendants claim that Plaintiff's medical records indicate that she did not inform the medical providers giving her treatment that she had been in a car accident in 2009. (Reply at 3-5.) As a result, argue Defendants, those doctors' opinions as to causation are irrelevant, as they did not have sufficient information to determine whether the 2009 collision might have caused Plaintiff's injuries. (Id.) As to Dr. Dassa, who was aware of Plaintiff's 2009 collision and still found that the 2015 collision at least exacerbated her injury, Defendants contend that his opinion is unreliable because he only examined Plaintiff once and because he found that some of her spinal injuries were less severe than those stemming from her 2009 collision. (Id. at 5-6.)

The court disagrees with Defendants about the reliability of Dr. Dassa's report. While it is true that Dr. Dassa examined Plaintiff only once, the same is true of Defendants' experts, on whom Defendants rely. (See id. at 6.) Moreover, as Defendants acknowledge, Dr. Dassa did diagnose Plaintiff with a disc herniation that was not present in her 2009 MRIs (id.), which undermines Defendants' claims that his report inconsistently indicates that her injuries following the 2015 accident were actually less severe than her previous injuries.[2] And, most importantly for Plaintiff, Dr. Dassa did address the previous accident and determine, after reviewing Plaintiff's medical records and examining her, that the injury was at least exacerbated by the 2015 accident. (See Dassa Report at 4.)

Moreover, while Plaintiff's treating physicians throughout 2015 and 2016 did not rule out the 2009 accident as a potential cause of Plaintiff's injuries, their records do consistently indicate

---

[2] The court also notes the logical inconsistency inherent in this argument. Even if Plaintiff did suffer worse injuries in 2009 than in 2015, it is entirely possible—and, indeed, plausible, given her testimony and treatment record—that Plaintiff had largely recovered from those injuries in the intervening years. As she did not get an MRI immediately prior to the 2015 accident, the differences between the two MRIs can provide essentially no evidence as to the extent that the 2015 accident worsened Plaintiff's condition.

12

that Plaintiff's injuries appear trauma-related. (See, e.g., Dr. Leist Feb. 17, 2014 Records (Dkt. 28-1 at ECF p.2) at 2; Washington Medical, P.C. Mar. 18, 2015 Records at ECF p.11.) Thus, at the very least, these records provide contradictory evidence to Defendants' experts' claims that Plaintiff's injuries may be degenerative in nature. (See Kim Report at 7-8; Sapan Reports at ECF pp.11, 13, 15.)

In sum, both Plaintiff and Defendants have provided testimony from medical experts who examined Plaintiff in the fall of 2017. Plaintiff's expert says the 2015 accident caused her injuries; Defendants' experts say it did not. Records from Plaintiff's treating doctors provide further evidence that her injuries are traumatic, rather than degenerative. Which doctors are to be believed is a question of credibility that must be left to a jury. See Alvarez v. E. Penn Mfg. Co., No. 10-CV-9541 (RKE), 2012 WL 4094828, at *10 (S.D.N.Y. Sept. 17, 2012) (holding that, as to causation, "conflicting [expert] reports . . . create a genuine dispute for trial"); Spencer v. Golden Eagle, Inc., 920 N.Y.S.2d 24, 26 (N.Y. App. Div. 2011) (finding that the plaintiff had raised a triable issue of fact when contemporaneous medical records indicated, in contrast to the defendants' expert reports, that the plaintiff's injuries were not degenerative); Linton v. Nawaz, 879 N.Y.S.2d 82, 87 (N.Y. App. Div. 2009) (holding that where a doctor determined, contrary to the defendants' expert reports, that the plaintiff's injuries were caused by the accident "based on a full physical examination of plaintiff made within days of the onset of plaintiff's complaints . . . , which plaintiff told him ensued after he was involved in a traumatic accident," plaintiff had "raise[d] a triable issue as to whose medical opinion was worthy of greater weight"). Plaintiff has therefore provided sufficient evidence to create a triable issue of fact as to causation.

## IV. CONCLUSION

For the foregoing reasons, Defendants' (Dkt. 27) motion for summary judgment is DENIED. The parties are directed to contact the chambers of Magistrate Judge Ramon E. Reyes regarding next steps in the case.

SO ORDERED.

Dated: Brooklyn, New York
September 27, 2019

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge